Harper, Ch.
This was a petition for re-hearing on the part of the defendants in the cause above stated, in which a decree was made by Chancellor DeSatjssure in April, 1828. It was also prayed that the proceedings might be taken from the file, on two grounds :
1. That the defendants had never been made parties to the suit by the service of a subpoena ad respondendum.
2. Supposing the defendants to have been made parties, the proceedings were at an end and the cause out of Court, in consequence of the delay in the prosecution — no decretal order having been made for three years, as required by the Act of the Legislature, and, therefore, the decree was unauthorized.
As to the first ground, it is sufficient to say that a subpoena ad respondendum was produced, returned duly served by the Sheriff. It was objected that the return does not appear to *470 have been sworn to ; but in the case of Belser vs. Graves, 1 N. and McC. 125, it was decided, by the Constitutional Court, to be unnecessary that the Sheriff’s return should appear to have been sworn to, on the process itself. It will be presumed that he has made his return according to law, and if the parties have sustained any injury, their redress must be against the Sheriff by an action for a false return. The complainants in the cause, in their answer to the petition, state that the petitioners were duly served ; and the petitioners must have been aware that a suit was depending, as they appeared by counsel to a motion for injunction in the beginning of the cause,- which was granted to continue till the further order of the Court. Persons may make themselves parties defendant without service of process.
Nor do'I think the petition can prevail on the second ground. The bill was filed on the 15th Nov. 1822: injunction was granted 27th Nov. 1822 : on the 16th Nov. 1824, an order was made that the bill be taken pro confesso. On the 16th May, 1826, an order appears on the minutes, that the case be restored to the docket; on the 1st Feb. 1828, it was ordered that the order of reference in the case should be extended, and on the 29th of April, 1828, the report was read, and on hearing, the Chancellor delivered the decree.
The Act of 1784 (a) declared that all suits in this Court shall be decided within one year from the time they are commenced, unless on sufficient cause shewn for their continuance. That of 1789 (b) extends the time to two years. The Act of 1810 (c) provides that the Court may continue a cause for more than three years by consent; or without consent, on sufficient ■ cause shewn, in any case where a decretal order shall have been made within three years. Under this Act, no doubt a party defendant may have a bill dismissed at the end of three years after a de-cretal order made, whatever cause may be shewn for a further continuance. But the uniform practice of the Court has shewn that the cause is not, ipso facto, out of Court, if such motion be *471 not made. If the party be in Court and does not move to dismiss, this may be held evidence of consent: for, as I understand the Act, in cases of consent, it is not necessary that a decretal order should have been made within three years. Or the parties’ being in default, may be equivalent to consent to whatever shall be done in the cause. No hardship can be done to one of the defendants, who is in Court and does not move to dismiss, and he who is in default has still less reason to complain. The Act of 1810,'making the continuance depend on consent, shews the regulation not to have been made on grounds of public policy, but for the benefit and convenience of parties in Court.
The petition also alleged error in the decree, as a ground of re-hearing. The bill alleged that William Moer, deceased, was indebted to the complainant, Jeannerett, abalance on a bond, in trust for the complainant Eliza Steedman, wife of Thomas Steedman : that certain property had been mortgaged to secure the said bond, which had been exhausted and proved insufficient for the purpose : that while so indebted, the said William Moer executed a voluntary conveyance to the defendant Curtis, in trust for his (Moer’s) wife, Jane Moer, now the defendant Jane Radford, wife of John J. Radford, and charged that the trustee Curtis was about to sell the slaves. The bill prayed an injunction against the sale, and for general relief.
The decree of the Court was, that the defendants, Radford and wife, should pay the balance due on the bond, and that the conveyance from Moer to Curtis should be set aside.
The error relied on is, that the case stated by the bill could not authorize the decree. No facts are charged which could render the defendants personally liable to pay the bond, nor was such relief prayed for. As to the prayer, the rule is, that if there be a prayer for any specific relief, and likewise a prayer for general relief, the Court may grant any relief that the case authorizes and requires, not inconsistent with the specific relief prayed. 2 Madd. Ch. 139. The specific relief prayed for in this case, was the injunction against the sale, and the relief granted was not inconsistent with this.
*472 As to the question of re-hearing, the organization and practice of the Courts of Chancery in this State are so different from those of the country from which we derive our jurisprudence, that it is exceedingly difficult to apply the rules which obtain there. It was decided by the late Court of. Appeals in Equity, that after a full and final hearing, the Court is not at liberty to open cases for re-hearing, on account of error in the decree. Burn vs. Poaug, 3 Dess. 596; Haskell vs. Raoul, 2 Tread. 896. The present Court of Appeals, in the case of Haskell vs. Raoul, 1 McC. Ch. 22, held the same opinion. The Court, to be sure, decides on the ground, that the specific motion had been disposed of by the former Court; but strongly intimates its concurrence in the doctrine established. If the Court of Appeals cannot re-hear its own decree, it would seem to follow that this Court cannot re-hear a decree sanctioned by that Court; as, in England, there can be no re-hearing after an appeal to the house of Lords. But, by the Act of Assembly of 1808, (d) orders and decrees of the Judges, not appealed from, “shall have the same effect with decrees sanctioned by the Court of Appeals.” I think that I ought to re-hear, so as to correct any apparent error of a decree delivered by myself; provided, the application be made before the time for appealing has elapsed. It may save the necessity of appealing, or prevent delay and expense. But, under the Act of Assembly referred to, I should greatly doubt my authority to do so after that time. It was argued, that in the present case, it was not in the parties’ power to appeal or apply for a re-hearing within the time mentioned, as they were not aware of the pendency of the suit or of the decree. But, as I have decided that they were properly made parties, I must hold their ignorance to have been the consequence of their own laches.
I have said, “a decree made by myselffor my authority to re-hear the decree of another Chancellor for error apparent, would be more than questionable. In England, if the party *473 against whom the decree has gone, supposes that there is error, it is at his option either to appeal or to apply for a re-hearing. The appeal is either from the Master of the Rolls to the Chancellor, or from the Chancellor to the House of Lords; but the application for re-hearing is, of course, to the Judge who made the decree. In this State, there is more than one Chancellor of equal authority; and that one of them should re-hear the decree of another, for error apparent, would be, in fact, to entertain an appeal. And it will not do to say,, that though different individuals, they constitute the same Court, and may re-hear, as a Chancellor in England re-hears the decree of his predecessor. As distinct individuals, they may have different opinions, and might re-hear and reverse each other’s determinations as long as ■ the difference continued.
But, though I were of opinion that I could re-hear after the time for appeal had elapsed, or re-hear the decree of another Chancellor, I should be satisfied that I could not do so on the grounds alleged in the present petition. The application for rehearing in England, as explained by Lord Eldon in Perry vs. Philips, 17 Ves. 178, may be either for error in the decree, or error apparent. Lord Eldon says the distinction is a wide one. The former is an erroneous judgment or mistake in law, “ to be collected from all the pleadings and evidencethe latter, as the words import, a plain error in law, apparent from the terms of the decree itself; as in the instance put, of an absolute decree against an infant, without a day to show cause, or that mentioned by Cooper in his treatise on Equity pleading, 90, of a decree to distribute the legacy belonging to an infant intestate between his mother, brothers and sisters, when, by the statute law, it vested entirely in the father, who survived the child. Now, with respect to the erroneous judgment to be collected from all the pleadings and evidence, it is plainly impossible, in this State, where the evidence is not reduced to writing, but witnesses are examined viva voce, to determine whether the judgment was erroneous or no. The party who impeaches the decree must show the error; but, it would open the ¿loor to a *474 new and most hazardous sort of litigation, to admit evidence, to show what facts were established on the former hearing, and thence to deduce error in the decree. In the present case, there is no error apparent on the face of the decree itself. It is only to be collected from the pleadings, and from inference as to what the testimony must have been.
It was argued, however, that the decree must have been erroneous, as is evident from comparing it with the bill, withoht reference to the.testimony. • The bill states no case — charges no facts, to render the defendants personally liable for the balance due on the bond. On this bill, testimony was not admissible to make out such a case as would render them so liable, and it cannot be presumed that such was given. Now, according to the English practice, I am- not aware of any authority for opening a decree and re-hearing, on account of the insufficiency of the bill, if a sufficient case to warrant the decree be made out from the testimony. If the defendants had heen present at the hearing, and testimony had been offered to make out a case not made by the bill, that testimony would have been rejected if objected to; but, if the justice of the case had required it, leave would have been given the complainants to amend. If the evidence were not objected to, it would have been a waiver of the defect of the bill, and the question of re-hearing would have been considered on the whole of the pleadings and testimony. But, as I before observed, it must be taken as the default of defendants that they were not present at the hearing. If the testimony in the present case had been in writing, and it appeared that a sufficient case was made out to warrant the decree, and that justice had therefore been done, certainly the Court would not grant a new hearing for the defect of the bill. There would be no purpose to be answered by doing so, as the party might still be allowed to amend, and re-hearing is discretionary in the Court, even though there may have been some error in the decree. Mills vs. Banks, 3 Pr. Wms. 1. But, according to our practice, it cannot appear whether there was such testimony or no — nor can the petitioners therefore show whether there was *475 error or no, which is necessary to entitle him to a re-hearing. If it had appeared in evidence, that the defendants were the executor and executrix of Moer, and had received' assets to the amount of the balance due on the bond, or that the defendant, Radford, had removed the slaves out of reach of the process of-the Court, this would have warranted the decree that was made. And there is reason to suspect, that some testimony to this effect was offered, as the letters testamentary showing the defendant, Mrs. Radford, to have been the executrix of her former husband, were found in the bill. It is so common, that a case should be made out somewhat different from that stated in the bill, and a decree made accordingly, without the formality of amendment, that it would be of dangerous consequence to permit decrees to be impeached for such defect.
It is ordered and adjudged, that the petition be dismissed.

 7 Stat. 209.

 7 Stat. 262.

 7 Stat. 310.

 7 Stat. 304.